UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| PANERA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:16-cv-1181-JAR |
| | ) | |
| MICHAEL R. NETTLES and | ) | |
| PAPA JOHN'S INTERNATIONAL, INC., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of Plaintiff Panera, LLC ("Panera"), for a temporary restraining order ("TRO") (Doc. No. 2). A hearing on Panera's motion was held on July 27, 2016, at which counsel for Panera and Defendants Michael Nettles ("Nettles") and Papa John's International, Inc. ("Papa John's") appeared. For the following reasons, the motion will be granted.

## BACKGROUND

The facts, summarized herein, are set forth in Panera's complaint. Panera is a corporation that operates "bakery-cafes," located in urban, suburban, strip mall, and regional mall locations throughout the country. Nettles was an employee of Panera from 2012 through June 2016, and he served as the Vice President of Architecture in Panera's Information Technology department. Panera describes Nettles as "a critical leader in Panera's IT department," and asserts that he "was invited to join many of Panera's high-level discussions relating to its strategies as it relates to use of its technologies." (Doc. No. 1 at 4-5.) Panera also alleges that it "prides itself on being several steps ahead of the game in developing its technological systems," and cites as an example its recent "Panera 2.0" program, "an integrated, comprehensive, end-to-end solution that aims to reduce wait times, improve order accuracy, and minimize or eliminate crowding[.]" *Id.* Panera asserts that in

his role as Vice President of Architecture, Nettles had access to valuable and confidential information, including information related to Panera's strategic business plans.

As a condition of Nettles' employment with Panera, he signed a confidentiality and non-competition agreement in 2012, and a revised version of that agreement in 2013.  Neither party disputes that both iterations of the agreement were supported by adequate consideration.  The 2013 amended agreement specifically listed Papa John's as Panera's competitor (along with approximately 28 other companies), and barred Nettles from working for competitor companies for a period of one year following the end of his employment with Panera.  The agreement stated that a violation of the non-compete clause would constitute irreparable harm to Panera, and that an injunction would issue in the face of such a violation.  (Doc. No. 7-1 at 1.)

On June 8, 2016, Nettles sent a lengthy email to Panera's CEO explaining his desire to accept an offer of employment in a corporate executive role with Papa John's based in part on his wife's recent and untimely death, and requesting a waiver of the non-competition agreement. Panera's CEO did not agree to such a waiver.  Despite not receiving a waiver from Panera's CEO, Nettles tendered his resignation to Panera on July 1, 2016, with sixty days' notice, but Panera asked him to leave immediately.  Nettles began working for Papa John's as Senior Vice President, Chief Information and Digital Officer, on July 18, 2016.

Panera claims that Nettles stored and had access to confidential and proprietary Panera materials on his personal laptop, and potentially on other electronic personal devices.  Upon his resignation, Nettles apparently created a backup directory of Panera's files, which he transferred to a Panera-issued laptop.  Nettles then deleted the Panera materials from his personal computer, and seemingly returned his personal computer to the factory-issued settings.[1]

---

[1] At the hearing held on July 27, 2016, Nettles' counsel suggested that Nettles merely deleted the information from his laptop.  However, Nettles' counsel previously represented, in a letter to Panera's counsel, that the laptop had been returned to "'factory' state."  (Doc. No. 7-3 at 11).

Panera's Complaint alleges that Nettles' actions constitute a breach of contract, and that by hiring Nettles, Papa John's negligently interfered with a contractual relationship. In addition, Panera asserts causes of action for violation of the Defend Trade Secrets Act, the Missouri Uniform Trade Secrets Act, the Missouri Computer Tampering Act, and Civil Conspiracy against both defendants.

In the instant motion for a TRO, Panera asks that the Court enjoin Papa John's from employing Nettles or using any confidential information derived from Nettles. Panera asks that Nettles be similarly enjoined from working for or disclosing trade secrets or confidential information to Papa John's. Finally, Panera asks the Court to order Nettles to provide his personal laptop and any other materials that may have housed Panera information for review and inspection. In response, Nettles argues that the confidentiality and non-competition agreement is not enforceable because (among other reasons) Panera and Papa John's are not competitors. In addition, Nettles argues he essentially signed the 2013 agreement under duress because his wife was dying and battling cancer. Nettles also contends that an agreement requiring Nettles not to divulge Panera's confidential information would be a sufficient and less-restrictive means of preventing any irreparable harm. Finally, Nettles asserts that Panera has offered mere conjecture regarding the purported misappropriation of trade secrets.

## DISCUSSION

In determining whether to issue a TRO, the Court must consider the following four factors: (1) the threat of irreparable harm to the movants; (2) the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movants will succeed on the merits; and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc). "While no single factor is determinative, the probability of

---

Panera suggests that this means the "metadata" associated with the information—which might reveal when or to whom Nettles transferred the information—is no longer accessible.

success factor is the most significant." *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013) (citation omitted).   The party requesting injunctive relief bears the "complete burden" of proving that an injunction should be granted.  *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987).

      A. Likelihood of Success on the Merits

      The Court is satisfied that Panera is likely to succeed on the merits of several of its claims, including its request for enforcement of the confidentiality and noncompetition agreement, as well as its request for injunctive relief in order to protect the disclosure of its confidential information and trade secrets.

      Under Missouri law, non-compete covenants are enforced if they are reasonable under the circumstances and their enforcement serves legitimate protectable interests. *Mayer Hoffman McCann, P.C. v. Barton*, 614 F.3d 893, 908 (8th Cir. 2010).  Here, the non-competition agreement at issue limits Nettles' employment for only one year, which is reasonable.  *See Alltype Fire Prot. Co. v. Mayfield*, 88 S.W.3d 120, 123 (Mo. Ct. App. 2002) (finding a two-year limitation on employment reasonable). Further, Nettles has accepted employment with a company specifically included in the agreement's discrete and reasonable list of competitors, which appears to be, for purposes of the TRO, an actual competitor to Panera.  Therefore, the Court finds the agreement reasonable and valid, and concludes that Panera will likely succeed on the merits.

      Defendants contend that the non-competition agreement is not enforceable because Panera and Papa John's are not actually competitors under Missouri law.  They direct this Court to *Victoria's Secret Stores, Inc. v. May Dep't Stores Co.*, 157 S.W.3d 256 (Mo. Ct. App. 2004), for the proposition that even a purported competitor selling the same products may not be a "competitor" under the narrow definition ascribed to that term for purposes of construing noncompetition agreements.  *See also id.* at 262 ("Covenants not to compete are enforceable only

- 4 -

to protect against unfair competitive use of either customer contacts or trade secrets.")  Defendants assert that Papa John's and Panera do not market the same product; Papa John's focuses its business on pizza, and Panera largely markets bread items, sandwiches, soups, and salads.

However, Panera has proffered evidence—including Papa's John's own marketing materials, submitted into the record during the hearing—that Papa John's and Panera both target a so-called "clean ingredient consumer," and that they are direct competitors in the realm of carryout options for such a consumer base.  Panera also distinguishes *Victoria's Secret Stores, Inc.* because the noncompetition agreement in that case did not specifically name the competing business in the way that Panera's agreement names Papa John's as a competitor.  Panera suggests that no Missouri case has refused to enforce a noncompetition agreement against a named competitor when that agreement was otherwise reasonable.

The Court need not make any definitive finding on the breadth of Missouri law as expressed in *Victoria's Secret Stores, Inc.* at this juncture as the facts in this case appear sufficiently distinguishable; such a final determination is more appropriately taken up in any eventual motion for a preliminary or permanent injunction.  The Court finds it sufficient to note, for purposes of this TRO, that the confidentiality and non-competition agreement directly names Papa John's, and appears to be reasonably constructed so as to prohibit unfair competition without improperly proscribing the signatory's ability to find new employment.  Although the agreement could be subject to a broad interpretation—one that might be vulnerable to claims of overbreadth—the case before the Court does not require such a broad construction, but instead is limited to enforcement of the agreement against a specifically named competitor.

The Court also finds Panera likely to succeed on the merits of its trade secret claims.  In order to establish a violation of the Missouri Uniform Trade Secrets Act, a plaintiff must demonstrate "(1) the existence of a protectable trade secret, (2) misappropriation of those trade

secrets by Defendants, and (3) damages." *Secure Energy Inc. v. Coal Synthetics, LLC*, 708 F. Supp. 2d 923, 926 (E.D. Mo. 2010). Missouri law defines a trade secret as: "information, including but not limited to, technical or nontechnical data, a formula, pattern, compilation, program, device, method, technique, or process . . ." (emphasis added.) Mo. Rev. Stat. § 417.453(4). Misappropriation is defined as the use of a trade secret:

> without express or implied consent if that person: (a) used improper means to acquire knowledge of the trade secret; (b) knew or had reason to know that it was a trade secret and that knowledge had been acquired by accident or mistake; or (c) at the time of the use, knew or had reasons to know that knowledge of the trade secret was (1) derived from or through a person who had utilized improper means to acquire it, (2) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or (3) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use.

*Secure Energy*, 708 F. Supp.2d at 926.

Based upon the record, the Court finds that during his employment with Panera, Nettles was privy to and worked extensively with Panera's trade secrets regarding such matters as innovations in ordering and delivery technologies. Nettles' deletion of the documents in his possession, and return of his computer to "factory state", gives rise to a strong inference of irreparable harm, and suggests that Nettles may have violated his undisputed duty to maintain or limit the use of the information he possessed. Thus, the Court finds that Panera has a reasonable likelihood of success on the merits of its trade secrets claims.[2]

B. Irreparable Harm to Panera Absent an Injunction

Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages. *Gen. Motors Corp. v. Harry Brown's*, LLC, 563 F.3d 312, 319 (8th Cir. 2009). Courts regularly find irreparable harm where a

---

[2] Although the Court's analysis has focused on Panera's Missouri trade secrets claim, an analysis under the Defend Trade Secrets Act would likely reach a similar conclusion.

non-compete agreement states that its breach constitutes irreparable injury. *See, e.g., Church Mut. Ins. Co. v. Sands*, No. 14-CV-3119-S-DGK, 2014 WL 3907831, at *3 (W.D. Mo. Aug. 11, 2014) (holding that the breach of the non-compete agreement "per se supports an inference of irreparable harm especially since [defendant] consented in his non-compete agreement to an injunction against him in the event of breach").

By virtue of his position with Panera, Nettles was privy to Panera's substantial confidential and trade secret information directly affecting Panera's actual and prospective development of integrated technology systems, including ongoing business strategy. His employment as a technology executive at Papa John's is likely to draw upon, as a matter of course, his experience and knowledge with regard to Panera's confidential systems and business strategy. Although Missouri has not formally adopted the doctrine of inevitable disclosure—and neither has the Eighth Circuit, with regard to federal trade secrets claims—the Court finds the rationale underpinning such a theory helpful to understanding why Nettles' performance of his new role would almost certainly require him to draw upon and use trade secrets and the confidential strategic planning to which he was privy at Panera. *See, e.g., H & R Block E. Tax Servs., Inc. v. Enchura*, 122 F.Supp.2d 1067, 1076 (W.D. Mo. 2000) (recognizing that to prevail under theory of inevitable disclosure, "employers must demonstrate inevitability exists with facts indicating that the nature of the secrets at issue and the nature of the employee's past and future work justify an inference that the employee cannot help but consider secret information"). Courts generally hold that the disclosure of confidential information such as business strategy will result in irreparable harm to the plaintiff, and the Court agrees that Nettles' immediate employment with Papa John's is likely to lead to such disclosure. *See, e.g., Experitec, Inc. v. Stachowski*, No. 4:14CV00154 AGF, 2014 WL 11089362, at *3 (E.D. Mo. Jan. 30, 2014); *Reg Seneca, LLC v. Harden*, 938 F.Supp.2d 852, 860–61 (S.D. Iowa

2013); *TLC Vision (USA) Corp. v. Freeman*, No. 4:12CV01855 ERW, 2012 WL 5398671, at *5 (E.D. Mo. Nov. 2, 2012).

But even without relying on inevitable disclosure, the Court finds that here, where the irreparable harm to Panera may include not only the divulgence of trade secrets, but also the violation of a binding non-competition agreement designed to protect Panera's interests, Panera's remedy at law is inadequate, because its damages would be difficult if not impossible to measure. *Baker Electric Co-op., Inc. v. Chaske*, 28 F.3d 1466, 1473 (8th Cir. 1994); *Systematic Business Services, Inc. v. Bratten*, 162 S.W.3d 41, 51 (Mo. Ct. App. 2005).   Furthermore, Nettles expressly agreed that a violation of the non-compete clause of his agreement would constitute irreparable harm to Panera, and that an injunction issued against him would be a likely remedy.  (Doc. No. 7-1 at 1.)  For all of these reasons, there is sufficient likelihood of irreparable harm to justify imposition of a TRO.

Finally, Defendants have urged the Court to consider *Baxter Int'l, Inc. v. Morris*, 976 F.2d 1189, 1197 (8th Cir. 1992), in which the Eighth Circuit affirmed that "the district court's order enjoining [employee] from the use or disclosure of confidential information he acquired at [new employer] provides [former employer] with adequate protection.")  The Court finds *Baxter* wholly inapposite.  First, the Eighth Circuit's consideration of the enforcement of the noncompetition agreement in *Baxter* focused largely on choice of law issues that are not germane to this case. Ultimately, the Court considered application of the noncompetition agreement under Illinois law, again making the case malapropos to the instant matter.  Further, the Eighth Circuit merely affirmed the district court's decision that, based on the facts of that case, a confidentiality order was sufficient to protect the plaintiff's interests, and an order prohibiting the defendant from working for the new employer was not necessary.  Because of Nettles' executive position and knowledge of business strategy, and because of the apparent competitive relationship between the two companies,

the Court finds that enforcement of the noncompetition agreement is necessary and appropriate here.

C. Balance of Harms

In balancing the harm to the parties caused by entry of the TRO, the Court is mindful of Nettles' argument that he signed the 2013 amended agreement under duress.  While the Court is sympathetic to Nettles' situation at the time he signed the agreement, it is also true that Nettles did not challenge or seek to amend the terms of the agreement between 2013, when he signed it, and mid-2016, when the events giving rise to this lawsuit occurred.  Additionally, the harm to Nettles, if enjoined at least until such time as the Court can hold a preliminary injunction hearing, can be satisfied by the payment of any monies that may be lost during the period of non-employment.  Thus, the harm that Panera has suffered, and will continue to suffer absent an injunction, outweighs any harm to Nettles if his actions in competing with Panera are enjoined.

However, pursuant to Rule 65(c) of the Federal Rules of Civil Procedure, the Court will order that Panera provide a surety bond in the amount of **$200,000.00**, which Panera must post as security for the payment of such costs and damages (if any) as may be incurred or suffered by Nettles if he is found to have been wrongfully enjoined or restrained.  In deciding upon this amount, the Court has considered Nettles' weekly compensation at Papa John's and the time that will likely be required for the Court to hear and decide the motion for preliminary injunction.  The Court has also considered in determining the bond an amount for Defendants' attorneys' fees, should they be recoverable.

D. The Public Interest

Here, the balance of the equities also favors granting Panera's motion for injunctive relief. Enjoining Nettles from violating Missouri statutes and his contractual obligations will not harm the public, as it will continue to have access to Papa John's (and other competitors') products and

services.    Conversely,  denying  injunctive  relief  will  undermine  the  enforcement  of  statutes

including the Defend Trade Secrets Act and the Missouri Uniform Trade Secrets Act.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for a Temporary Restraining Order is

**GRANTED.**  (Doc. No. 2.)  A separate Temporary Restraining Order will be filed this day.

**IT IS FURTHER ORDERED** that Plaintiff shall post within 48 hours a bond in the sum of

$200,000, in compliance with Rule 65(c) of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that the parties shall submit, **within three (3) days of this**

**Order**, a proposed scheduling plan for disclosure and proposed dates for a combined preliminary

and permanent injunction hearing.


_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE

Dated this 3rd day of August, 2016.